In re David O. DAVENPORT,
Respondent.

A Member of the Bar of the District
of the District of Columbia
Court of Appeals.

No. 00–BG–911.

District of Columbia Court of Appeals.

Argued April 17, 2001.
Decided March 28, 2002.

Hamilton P. Fox III, Washington, DC, for respondent.

John T. Roney, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN, FARRELL, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

In this attorney discipline case, the Board on Professional Responsibility ("Board") reluctantly recommended that the respondent, David O. Davenport, be suspended for six months for commingling and negligently misappropriating funds in violation of Rule 1.15(a) of the District of Columbia Rules of Professional Conduct.[1]

---

1. In its Report and Recommendation, the Board noted its discomfort with its own recommendation of a six-month suspension in this case. The Board queried "whether the goals of the disciplinary system could be better served through an alternative sanction"

Davenport filed an exception to the Board's report and recommendation arguing that exceptional circumstances exist in this case to support a departure from the normal range of suspension for conduct involving commingling and negligent misappropriation of funds. Because the respondent has failed to materially distinguish his case from others where a six-month sanction was imposed, we adopt the recommendation of the Board.

## I.

■ The facts supporting the Board's findings of commingling and misappropriation of funds in violation of District of Columbia Rule of Professional Conduct 1.15(a), are not in dispute and are typical of fact patterns underlying these types of violations. Davenport improperly commingled his personal funds with the funds he was holding in trust for several clients and at times, he would use the escrow account as an operating account, a practice which ultimately resulted in his misappropriating a portion of the entrusted client funds required to be held on behalf of a third-party medical provider.

Davenport contends that his lack of a prior disciplinary history; his commitment to help a client population in the District of Columbia that is often underserved; the fact that none of his clients were adversely affected by his negligent misappropriation of client funds; and the fact that he took steps to reform his practice, after the misconduct was brought to his attention by Bar Counsel, should result in the imposition of a less severe sanction than a six-month suspension.

## II.

■ When we review a recommended sanction against an attorney, we accept the Board's findings of fact if they are supported by substantial evidence in the record. *See* D.C. Bar R. XI § 9(g)(1) (1996). Furthermore, we are required to adopt the recommended disposition of the Board "unless to do so would foster a tendency towards inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *Id.* In the present case, the Board concluded that Davenport engaged in negligent misappropriation of funds by allowing the balance in his trust account to fall below what he was required to hold in trust for a client's medical provider. We have held that misappropriation occurs when the balance in the account where entrusted funds are deposited falls below the amount that the attorney is required to hold on behalf of the client and/or third party. *In re Micheel,* 610 A.2d 231, 233 (D.C.1992); *accord, In re Reed,* 679 A.2d 506 (D.C.1996); *In re Pels,* 653 A.2d 388, 394 (D.C.1995). Misappropriation is defined as any "unauthorized use by an attorney of a client's funds entrusted to him or her, whether or not temporary or for personal gain or benefit." *In re Choroszej,* 624 A.2d 434, 436 (D.C.1992) (citing *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983)). In this case Davenport's testimony, as well as his bank records support the Board's finding that Davenport violated Rule 1.15(a), which requires attorneys to safeguard client and third-party funds and account for them apart from the lawyer's own funds.

When the Board finds that an attorney has commingled and negligently misappropriated funds, we have uniformly imposed a suspension for a period of no less than six months. *See In re Reed,* 679 A.2d at 506; *In re Ray,* 675 A.2d 1381 (D.C.1996); *In re Choroszej,* 624 A.2d at 436. Davenport, relying on language from our own

like probation for cases involving a single        instance of negligent misappropriation.

decision in *In re Reed,* 679 A.2d at 508, argues that his case presents "exceptional circumstances" that warrant holding his suspension in abeyance and placing him on probation.[2] *Id.* at 508. He contends that the mitigating circumstances present in his case makes the alternative sanction appropriate.

Specifically, Davenport relies on the following mitigating factors to support his contention that his circumstances are exceptional and warrant a lesser sanction: (i) no client was harmed by his conduct; (ii) the bank did not dishonor his overdraft check; (iii) he immediately transferred funds to cover the overdraft once he was notified it had occurred; (iv) it was only his inadvertent mistake of depositing a retainer check into the wrong account that resulted in the misappropriation; (v) there is no evidence of dishonesty; (vi) he recognized the seriousness of his misconduct; (vii) he has no prior disciplinary history; (viii) he is genuinely motivated by the desire to help his clients, not just to make money; and (ix) a six-month suspension will have a devastating impact on his sole practice. Despite the claim that his circumstances are exceptional, however, Davenport's mitigating circumstances are not significantly distinguishable from those of respondents in an unbroken line of cases in which an actual suspension of at least six months has been imposed. *See In re Chang,* 694 A.2d 877 (D.C.1997); *In re Reed,* 679 A.2d at 506 (D.C.1996); *In re Choroszej,* 624 A.2d at 434; *In re Hessler,* 549 A.2d 700 (D.C.1988).

In *Chang,* the respondent also commingled personal funds and escrow funds. The misconduct was brought to the attention of Bar Counsel by a bank overdraft notification. When confirmed, the respon-dent cooperated fully with Bar Counsel and provided an explanation for the misconduct. Chang, like Davenport, had a practice of using escrow accounts as operating accounts, and it was that practice which gave rise to the negligent misappropriation of some of the trust funds. *Id.* at 878–79. Chang, like Davenport, mistakenly believed that he had sufficient funds in his escrow account to cover the check that caused the overdraft. *Id.* at 879.

The hearing committee recommended that Chang be suspended for thirty days. The Board disagreed with the hearing committee's recommendation, however, and recommended that he be suspended for six months. The Board made its decision despite Chang's exemplary cooperation with Bar Counsel's investigation, his candor before the committee, the absence of any client complaint, and his established record of integrity and pro bono service to the Asian community. We adopted the recommendation of the Board concluding that Chang's conduct could not be distinguished from the conduct of similarly situated respondents in other cases, and that the mitigating factors were not more compelling than those presented in other cases where the respondents were suspended for six months.

Similarly, in *In re Choroszej,* this court imposed a six-month suspension for negligent misappropriation and failing to maintain complete records despite significant evidence of mitigation presented by the respondent. In that case, the respondent deposited funds received in settlement of a client's case, including his attorney's fees, into his escrow account and appropriately disbursed payment to the client. Choroszej, however, negligently failed to disburse payment to the client's doctors as he

---

**2.** In *Reed* we stated "It may be that, under certain circumstances, ..., holding a suspension in abeyance for this kind of violation might be appropriate." *In re Reed,* 679 A.2d at 508.

had agreed to do. Thereafter, he wrote checks drawn on the trust account to pay his own operating expenses, and reduced the account balance below the amount required to be held on behalf of the client to pay for medical expenses. In arguing for a lesser sanction, Choroszej cited to several factors as mitigating the severity of the sanction recommended by the Board including: his full cooperation with the Board during the investigation; the lack of any financial loss to his client; the fact that this was an isolated event; and the impact such a suspension would have on his solo practice. Despite his argument we concluded that the six-month suspension recommended by the Board was appropriate because Choroszej created the risk of misappropriation by keeping his fees in the trust account along with the monies to be disbursed on behalf of clients and failed to keep adequate records.

As the Board rightfully concluded in making its recommendation of a six-month suspension, Davenport's misconduct and mitigating circumstances are not exceptional. In fact, the misconduct and mitigating circumstances are not materially distinguishable from prior cases where we have imposed similar six-month suspensions.

Our decisions, in sum, demonstrate that only a showing of truly exceptional circumstances will cause the court to depart from the normal sanction of actual suspension, for a significant period of time, for commingling and misappropriation of the kind presented here. As the Board stated in its report, '[T]he virtual certainty of disbarment or a six-month suspension for acts of misappropriation serves the public and the profession by providing a powerful deterrent for any attorney who might contemplate engaging in this most serious misconduct.' Respondent's showing in mitigation does not persuade us to depart from that norm. We observe, for example,

that he used the trust account to pay personal and non-client expenses before the act of misappropriation occurred and that—as the Board found—he continued to use the account in that manner *until* Bar Counsel, alerted of the overdraft by an overdraft notification from Nations Bank filed pursuant to Rule 1.17 of the Rules of Professional Conduct, began its investigation of respondent. Thus, had Bar Counsel not intervened, it is reasonable to assume that additional acts of misappropriation would have occurred besides the single one charged. The happenstance that respondent was made aware of the neglect of his responsibilities confirms our view that his case should not be treated differently from those discussed above resulting in actual suspension. Therefore, we adopt the recommendation of the Board and suspend Davenport for six months for commingling and negligent misappropriation of client funds in violation of Rule 1.15(a) of the District of Columbia Rules of Professional Conduct. Finally, we direct respondent's attention to the requirements of D.C. Bar R. XI, § 14 and their effect on his eligibility for reinstatement. *See* D.C. Bar R. XI, § 16(c).

*So ordered.*