*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-566

FILED 12/22/16
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

IN RE GERALD I. KATZ, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 237925)

On Report and Recommendation
of the Board on Professional Responsibility
(BDN-D143-15)

(Submitted April 22, 2016                    Decided December 22, 2016)

*Peter F. Axelrad* for respondent.

*Wallace E. Shipp, Jr.*, Disciplinary Counsel, and *William R. Ross*, Assistant Disciplinary Counsel, for the Office of Disciplinary Counsel.

Before THOMPSON and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

PER CURIAM: The Maryland Court of Appeals disbarred respondent Gerald Katz after it determined that he had violated Maryland's Lawyers' Rules of Professional Conduct by willfully failing to timely file and pay his federal income taxes for over a decade. *Att'y Grievance Comm'n of Md. v. Katz*, 116 A.3d 999, 1007, 1013 (Md. 2015). Because D.C. Bar Rule XI, § 11 (c) establishes a default

rule that this court should impose the same discipline as the original disciplining jurisdiction, this court ordered Mr. Katz to show cause why reciprocal discipline should not be imposed. Mr. Katz bears the burden to show by clear and convincing evidence that an exception to the default rule applies. We conclude that Mr. Katz has failed to carry his burden and order that he be disbarred.

## I.      Factual and Procedural History

The Maryland Court of Appeals directed a trial court to hold an evidentiary hearing on the Maryland Bar Counsel's Petition for Disciplinary or Remedial Action against Mr. Katz. *Katz*, 116 A.3d at 1002. Thereafter the Maryland Court of Appeals adopted the trial court's findings (which Mr. Katz had not disputed, *id.* at 1005) that Mr. Katz filed his federal tax returns late for "tax years 1996 through 2005 and 2007 through 2010, and 'grossly underpaid' his income taxes for tax years 1996 through 2010," in the amount of $2,503,757.[1] *Id.* at 1002–03.

---

[1] Mr. Katz settled a civil tax action brought by the federal government by "consent[ing] to entry of a tax judgment . . . in the amount of $5,462,935.25, which represented the amount of federal income tax owed . . . plus interest and penalties." *Katz*, 116 A.3d at 1002. Though Mr. Katz agreed to fulfill this judgment by making one lump sum payment of several hundred thousand dollars, and monthly payments thereafter, he had not fulfilled the former commitment as of the time of his disciplinary proceedings in Maryland. *Id.*

Based on these findings, the Maryland Court of Appeals determined that Mr. Katz had violated Maryland Lawyers' Rules of Professional Conduct (MLRPC) 8.4 (a)–(d) (2015).[2] Specifically, the Maryland court held that Mr. Katz's "repeated, willful failure to pay his federal income taxes and timely file his federal income tax returns represent[ed] dishonest conduct that violated MLRPC 8.4 (c)," *Katz*, 116 A.3d at 1007, as well as criminal conduct "reflect[ing] adversely on his fitness to practice law" that violated MLRPC 8.4 (b), *id.* at 1007–09, and conduct "prejudicial to the administration of justice" under MLPRC 8.4 (d), *id.* at 1010. The Maryland court further concluded that "because [Mr.] Katz violated MLRPC 8.4 (b), (c), and (d), he also violated MLRPC 8.4 (a)." *Id.*

---

[2] These Rules are virtually identical to the D.C. Rules of Professional Conduct, *see* D.C. R. Prof'l Conduct 8.4, and state that:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct . . . ;
>
> (b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
>
> (d) engage in conduct that is prejudicial to the administration of justice. . . .

MLRPC 8.4 (a)–(d) (2015).

In considering the appropriate sanction for these Rule violations, the Maryland Court of Appeals weighed the severity of Mr. Katz's misconduct—the failure "to timely file his income tax returns for 14 years," and the underpayment of "his taxes for 15 years to the tune of approximately $2.5 million"—noting that it was "far more egregious than that of other attorneys [the Maryland court] ha[d] suspended for failure to file and pay their income taxes." *Id.* at 1011. The court also noted that a "critical consideration" was Mr. Katz's "intentional dishonest conduct for personal gain," again contrasting cases in which the court had determined that the lesser sanction of suspension was appropriate because "the willful failure to file [wa]s not the result of fraudulent or dishonest intent." *Id.* at 1012. "In light of the severity of [Mr.] Katz's intentional dishonest conduct, and finding no mitigating factors," the Maryland court "concluded that disbarment [wa]s the appropriate sanction." *Id*. at 1013.

## II.    Whether Reciprocal Discipline Should Be Imposed

D.C. Bar Rule XI, § 11 (c) establishes a default rule that this court should impose the same discipline as the original disciplining jurisdiction. *See In re Chaganti*, 144 A.3d 20, 23 n.3 (D.C. 2016). An attorney may escape reciprocal discipline only if he can show, by clear and convincing evidence, that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C. Bar R. XI, § 11 (c). These exceptions are narrowly interpreted. *In re Chaganti*, 144 A.3d at 23. As this court has previously stated, "reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *In re Zdravkovich*, 831 A.2d 964, 969 (D.C. 2003).

Mr. Katz invokes Rule XI, § 11 (c)(3) and (4), but does not separately develop arguments under these distinct exceptions as to why this court should not reciprocally disbar him. Instead, he presents a jumble of arguments seemingly aimed at demonstrating that this court would not have disbarred him for his

misconduct had it come before us as an original matter.[3]  We rather think we would

have, *see infra* notes 8 & 9, but that is not the question.  As we explained in *In re*

*Zdravkovich*:

> Underlying our strict standard in reciprocal bar discipline
> cases is not only the notion that another jurisdiction has
> already afforded the attorney a full disciplinary
> proceeding, but also the idea that there is merit in
> according deference, for its own sake, to the actions of
> other jurisdictions with respect to the attorneys over
> whom we share supervisory authority.  Our standard in
> reciprocal bar discipline proceedings comports with
> constitutional due process requirements because the
> attorney either has had an evidentiary hearing or had the
> right to one.  It also is firmly established that principles
> of collateral estoppel apply in reciprocal discipline cases.

831 A.2d at 969 (citations omitted).

Thus, although the "contours" of our grave injustice exception, contained in

D.C. Bar Rule XI, § 11 (c)(3), "are not clearly defined," *In re Chaganti*, 144 A.3d

at 26, we have never indicated that a mere departure from the discipline this court

---

[3]  Mr. Katz also argues that the Maryland court's decision to disbar him was inconsistent with other Maryland disciplinary decisions.  The internal consistency of a foreign jurisdiction's discipline has no independent bearing on our decision to impose reciprocal discipline.  *See* D.C. Bar R. XI, § 11 (c).

would have imposed satisfies that exception to the default rule. Similarly, although we consider what discipline this Court likely would have imposed as part of our analysis under Rule XI, § 11 (c)(4), we have made clear that the sanction from the foreign jurisdiction "need not be one that [Disciplinary] Counsel would have sought had it been an original proceeding in the District; the sanction need only fall within the range of sanctions possible here in the District." *In re Jacoby*, 945 A.2d 1193, 1200 (D.C. 2008). Moreover, even where the discipline imposed in this jurisdiction would have been different from that of the disciplining court, we depart from reciprocal discipline only if "the difference is substantial." *In re Garner*, 576 A.2d 1356, 1357 (D.C. 1990).

Reviewing the arguments made by Mr. Katz as to why he would have been disciplined differently in this jurisdiction, we are not persuaded that he is entitled to relief under either Rule XI, § 11 (c)(3) or (4).

Mr. Katz first argues that although the Maryland Court of Appeals concluded that his failure to timely file and pay his taxes amounted to criminal conduct, *Katz*, 116 A.3d at 1007–09; *see also* 26 U.S.C. § 7203 (2012), this court has "no precedent" for characterizing attorney misconduct as criminal conduct,

absent a criminal conviction. This is incorrect,[4] and, in any event, irrelevant, as we defer to the Maryland court's characterization of Mr. Katz's misconduct.[5] *See In re Pennington*, 921 A.2d 135, 136, 142–44 (D.C. 2007) (rejecting a lenient sentence in a reciprocal discipline case on the basis that this court must defer to "nature of the misconduct" found by the Maryland court).

Next, Mr. Katz argues that "there has been no claim of a willful failure to file tax returns; there has only been a claim of failure to *timely* file tax returns," the latter of which he contends has not resulted in disbarment in the District even in

---

[4] *See, e.g.*, *In re Slattery*, 767 A.2d 203, 207 (D.C. 2001) ("There is no requirement . . . that an attorney actually have been convicted of a crime for the rule to apply."); *In re Gil*, 656 A.2d 303, 305 (D.C. 1995) ("In construing the phrase 'criminal act' for purposes of Rule 8.4 (b), this court properly may look to the law of any jurisdiction that *could have* prosecuted respondent for the misconduct." (emphasis added)). Seemingly conceding the point, Mr. Katz argues in his Reply to Disciplinary Counsel's Statement Regarding Reciprocal Discipline that this court "has not yet directly addressed the question of failure to timely file an income tax return or timely pay the requisite taxes absent a criminal conviction." But he fails to explain why we would make an exception to our general rule for this particular subject matter.

[5] Mr. Katz concedes that he "never denied" that the Maryland Court of Appeals "found that his actions were willful," and he makes no argument to this court that the evidence did not support the Maryland court's determination that he willfully failed to timely file his taxes and grossly underpaid his taxes or that the Maryland court misinterpreted 26 U.S.C. § 7203 as applied to his conduct.

cases where the attorney was convicted of a crime.[6]  Preliminarily, the Maryland court determined that Mr. Katz had engaged in misconduct that amount to a violation of 26 U.S.C. § 7203, which itself makes no distinction between the failure to file at all and a failure to timely file.  Instead, any person required to file taxes "who willfully fails to . . . make such return . . . at the time or times required by law or regulations" is guilty of willfully failing to file taxes.  26 U.S.C. § 7203.  Thus there is no legal distinction between willfully failing to file taxes until five years after they are due, as Mr. Katz did, *Katz*, 116 A.3d at 1003, and willfully failing to file taxes at all.

More to the point, Mr. Katz cites no cases from this jurisdiction where we have declined to disbar someone for failing to timely pay, over a period of many years, millions of dollars in taxes owed.  Instead Mr. Katz relies on our decision in *In re Kerr*, 611 A.2d 551 (D.C. 1992), arguing that the attorney's conduct in that case was more egregious because it resulted in a criminal conviction, and yet the

---

[6]  Mr. Katz confusingly cites to D.C. Bar Rule XI, § 10, and argues that it only requires suspension of attorneys found guilty of "serious crimes"; but he misunderstands the purpose of the rule, which is to suspend such attorneys during the pendency of disciplinary proceedings (which may well result in disbarment).

attorney was only suspended.[7] We disagree. That attorney "knowingly filed [one] false federal income tax return" by failing to claim $8,000 of income, but he later amended his return and paid taxes due. *In re Kerr*, 611 A.2d at 552. By contrast, Mr. Katz filed his federal tax returns one to five years late for fourteen years, during which period he "grossly underpaid" his federal taxes even though he "had available to him large amounts of discretionary income" which could have been used to fulfill his tax obligations. *Katz*, 116 A.3d at 1006, 1008–09 (noting that "there is no indication that Katz used the money for anything other than personal, excessive expenditures"). In the Maryland court's view, Mr. Katz's "willful[] fail[ure] to file his federal income tax returns" amounted to fraud and "intentional dishonest conduct for personal gain." *Id.* at 1009, 1012. Thus, on the undisputed facts and the Maryland court's characterization of those facts, which Mr. Katz has not contested, his misconduct was far more egregious than the misconduct of Mr.

---

[7] Relying on *In re Kerr*, Mr. Katz also argues that the failure to pay taxes or timely file tax returns is not a crime of moral turpitude *per se* in the District. But whether a crime is one of moral turpitude *per se* and thus requires disbarment under D.C. Code § 11-2503 (a) (2016 Repl.), is not our concern in a reciprocal discipline case where, as we explained above, the pertinent inquiry is whether this court would have imposed the same sanction or something sufficiently close to it. *See In re Garner*, 576 A.2d at 1357.

Kerr.  The mere fact that Mr. Katz was never criminally prosecuted does not alter our conclusion on this point.[8]

Lastly, Mr. Katz seems to make a mitigation argument.  He argues that, other than this case and one prior reciprocal discipline matter, *see supra* note 8, he has never had "any other disciplinary or criminal problems"; that "[n]o evidence was adduced in the Maryland proceeding to question [his] work ethic, professional integrity, client satisfaction, timeliness, or competency to perform his professional tasks"; and that his "personal issue regarding his income tax responsibilities is unrelated to his professional competence and performance as an attorney."  But Mr. Katz made virtually the same arguments to the Maryland Court of Appeals, and that court found "no mitigating factors" in his case.  *See Katz*, 116 A.3d at

---

[8]   We agree with Disciplinary Counsel that Mr. Katz's case is more analogous to *In re Shorter*, 570 A.2d 760, 761–63 (D.C. 1990) (holding that disbarment was an appropriate sanction for an attorney who failed to pay "$134,866.40 in federal taxes" over an eleven year period, was convicted of "one felony count of willful tax evasion" and "six misdemeanor counts of willful failure to pay taxes" under 26 U.S.C. § 7203, was found to have violated the precursor to Rule 8.4 (c), and had been disciplined for similar misconduct previously).  This is especially true in light of the fact that this court previously reciprocally disciplined Mr. Katz for willful failure to file state income tax returns in Maryland in 2004 and 2005.  *See In re Katz*, 45 A.3d 161, 161 (D.C. 2012); *see also Att'y Grievance Comm'n of Md. v. Katz*, 55 A.3d 909, 910 (Md. 2012); *accord In re Shorter*, 570 A.2d at 762 (noting that "this is not the first time that our court has been called upon to discipline respondent for tax-related offenses").

1011–13. Absent any argument that the Maryland court's procedures did not fulfill due process requirements or that its findings were factually unsubstantiated, we will not entertain these arguments anew. *See* D.C. Bar R. XI, § 11 (c); *In re Pennington*, 921 A.2d at 136, 142–44; *cf. In re Gilbert*, 538 A.2d 742, 746 (D.C. 1988) ("[W]e note that the Maryland court, in considering sanction, found 'the absence of any compelling extenuating circumstances.' We believe the misconduct does not warrant substantially different discipline from that imposed in Maryland." (citation omitted)).[9]

## III. Conclusion

We conclude that Gerald Katz has failed to demonstrate that he is entitled to relief from reciprocal discipline under either Rule XI, § 11 (c)(3) or (4). For the foregoing reasons, Mr. Katz is hereby disbarred from the practice of law in the District of Columbia and may petition this court for reinstatement five years from

---

[9] That said, had we confronted these facts as an original matter we may very well have found that such an extended failure to pay taxes owed, where there was no impediment to making full payment, would amount to "a pattern of dishonest dealing" with the federal government, *In re Shorter*, 570 A.2d at 771, which is "equally as reprehensible as cheating a client," *Katz*, 116 A.3d at 1012–13; *id.* at 1010 (observing that "[a]n attorney's willful failure to file income tax returns" indicates that he is "placing himself above th[e] law" and "may seriously impair public confidence in the entire profession").

the effective date of his disbarment, *In re McBride*, 602 A.2d 626, 641 (D.C. 1992), which shall be imposed *nunc pro tunc* to July 27, 2015, pursuant to D.C. Bar Rule XI, § 14 (g).

*So ordered.*